IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROGER THOMAS LEE ANDERSON       :       CIVIL ACTION
      :
        v.       :
      :
ANDREW M. SAUL,[1]       :
Commissioner of Social Security       :
Administration       :       NO. 19-2283

## MEMORANDUM OF DECISION

THOMAS J. RUETER
United States Magistrate Judge           December 12, 2019

      Plaintiff, Roger Thomas Lee Anderson, filed this action pursuant to 42 U.S.C. §

405(g), seeking judicial review of the final decision of the Commissioner of the Social Security

Administration ("Commissioner") denying his claim for supplemental security income ("SSI")

under Title XVI of the Social Security Act ("Act").

      Plaintiff filed a Brief and Statement of Issues in Support of Request for Review

("Pl.'s Br."), defendant filed a Response to Plaintiff's Request for Review ("Def.'s Br."), and

plaintiff filed a reply thereto ("Pl.'s Reply"). Additionally, defendant filed a Motion to Stay

(Doc. 14), to which plaintiff filed a response in opposition (Doc. 15). For the reasons set forth

below, the plaintiff's Request for Review will be **GRANTED** to the extent that the case be

remanded for further proceedings, and the Motion to Stay will be **DENIED**.

## I.     FACTUAL AND PROCEDURAL HISTORY

      Plaintiff filed an application for SSI on January 15, 2014, alleging disability

beginning July 24, 2008. (R. 174-84.) Plaintiff's claim was denied initially; he then filed a

---

[1]       On June 4, 2019, Andrew M. Saul became the Commissioner of the Social Security
Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul
should be substituted as the defendant in this case.

timely request for a hearing. (R. 96, 99-104.) A hearing was held on October 20, 2015, before

Administrative Law Judge ("ALJ") Anne W. Chain. (R. 32-68.) Plaintiff, represented by

counsel, appeared and testified. Christine A. Carrozza-Slusarski, a vocational expert ("VE"),

also testified.[2]

In a decision dated January 24, 2018, the ALJ found that plaintiff was not

disabled under the Act. (R. 14-31.) The ALJ made the following findings:

1.  The claimant has not engaged in substantial gainful activity since January 15, 2014, the application date/amended alleged onset date of disability (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments: degenerative disc disease (DDD), coronary artery disease (CAD), recurrent hernia, obesity, substance addiction disorder, affective disorder, and anxiety related disorder (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that he requires a sit/stand option; uses a cane for ambulation; cannot engage in more than occasional pushing/pulling with the lower extremities; cannot engage in climbing ladders, ropes, or scaffolds or crawling; cannot engage in more than occasional climbing of stairs/ramps, balancing, stooping, kneeling, crouching; no more than occasional exposure to extreme temperatures, pulmonary irritants including fumes, odors, dusts, gases, and poor ventilation, humidity, wetness, vibration, and moving machinery; no exposure to unprotected heights; limited to routine tasks with short simple instructions, simple work related decisions with few workplace changes; no interaction with the public; no work with codependents such as team

---

[2] During the administrative hearing, plaintiff's counsel explained to the ALJ that plaintiff had received a fully favorable decision for SSI benefits on June 25, 2012, but was subsequently advised that he was ineligible for such benefits due to the receipt of a worker's compensation settlement related to an injury he sustained in June 2008. After those assets were depleted, plaintiff reapplied for SSI benefits in January 2014; such application is the subject of the current request for review. See R. 36-41.

work; no more than occasional interaction with coworkers and
supervisors.

5.      The claimant is unable to perform any past relevant work (20 CFR
416.965).

6.      The claimant was born on November 30, 1970 and was 43 years old,
which is defined as a younger individual age 18-44, on the date the
application was filed (20 CFR 416.963).

7.      The claimant has a limited education and is able to communicate in
English (20 CFR 416.964).

8.      Transferability of job skills is not an issue in this case because the
claimant's past relevant work is unskilled (20 CFR 416.968).

9.      Considering the claimant's age, education, work experience, and residual
functional capacity, there are jobs that exist in significant numbers in the
national economy that the claimant can perform (20 CFR 416.969 and
416.969(a)).

10.      The claimant has not been under a disability, as defined in the Social
Security Act, since January 15, 2014, the date the application was filed
and the claimant's amended alleged onset date of disability (20 CFR
416.920(g)).

(R. 14-27.)

Plaintiff filed a request for review of the ALJ's decision that was denied and the

ALJ's decision became the final decision of the Commissioner. (R. 1-10, 146-73.) Plaintiff now

seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

The role of this court on judicial review is to determine whether there is

substantial evidence in the record to support the Commissioner's decision. Hagans v. Comm'r of

Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (citing 42 U.S.C. § 405(g)), cert. denied, 571 U.S.

1204 (2014); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence is

defined as "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence.  Jesurum v. Sec'y of U.S. Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995).  This court may not weigh evidence or substitute its conclusions for those of the fact-finder.  Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)).  As the Third Circuit has stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings."  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).

To be eligible for benefits, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A). Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).  Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment.  42 U.S.C. § 1382c(a)(3)(H)(i).

The Social Security Administration employs a five-part procedure to determine whether an individual has met this burden.  20 C.F.R. § 416.920.[3]  This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a

_____

[3]     For purposes of this opinion, the court will refer to the version of the relevant regulation in effect at the time of the ALJ's decision on January 14, 2016.

severe impairment; (3) has an impairment which meets or equals the requirements of a listed

impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to

perform other work, in view of his age, education, and work experience. See id. The claimant

bears the burden of establishing steps one through four of the five-step evaluation process, while

the burden shifts to the Commissioner at step five to show that the claimant is capable of

performing other jobs existing in large numbers in the national economy. Hess v. Comm'r of

Soc. Sec., 931 F.3d 198, 201 (3d Cir. 2019).

## III.    BACKGROUND

Plaintiff's testimony from the administrative hearing on October 20, 2015, reveals

that plaintiff has a ninth-grade education and is able to read, write, and perform simple math. (R.

42.) Plaintiff has not worked since his application date, but in the past worked at several

supermarkets stocking shelves. (R. 42-43.) Such work required plaintiff to remain on his feet

most of the time and to lift in excess of 100 pounds. (R. 43-44.) When asked whether he is

capable of performing less demanding work, plaintiff stated:

> I have to stand, sit like 20 minutes at a time, if that, half hour. It's very limited
> what I can do. It's very, very limited. I have to use my cane wherever I go. Like
> I said, I got to brace myself. I had four heart attacks at that time, and I have a
> hernia in my stomach.
>
> My bad back, what else can I say? I have a problem with PTSD. I take many,
> many medications. When I take my medication, I have to sleep. I mean that's all
> I do. I lay. I have to get up and sit. Even coming here to get dressed, I had my
> girlfriend help me get dressed. It's just like – it's very hard for me to do tasks,
> simple tasks around the house even.

(R. 44.) Plaintiff also explained that when he sought cardiac clearance for surgery to repair his

hernia, he was advised that several stents needed to be replaced. (R. 45-48.) As a result, he had

a cardiac catherization performed in June 2015 and was advised to return in six months for

another cardiac evaluation, to determine whether the hernia surgery could be performed at that time.  (R. 48.)

With respect to his back impairment, plaintiff testified that there were no changes to his condition since his prior application for benefits which was approved.  (R. 49.)  The ALJ reviewed the medical records with plaintiff and his attorney, who confirmed that plaintiff had not had further diagnostic testing done since a 2010 MRI and a 2011 EMG study.  (R. 49-50.)[4] Plaintiff stated that, although he had not had additional testing performed since that time, he continued to receive treatment for his back impairment, and other conditions, from Jonathan B. Levyn, D.O., his primary care physician.  (R. 53-54, 57.)  Plaintiff reported that he takes medication for his heart condition, back impairment, and PTSD.  (R. 54.)[5]  When asked to describe his back impairment, plaintiff stated: "My lower spine – it's my whole back, but my lower spine and middle of my lower spine I can't bend over and pick up anything.  And when I walk, I have to stop, sit.  I have to generally – gingerly do stuff."  Id.  Plaintiff also stated that he is "always in bed sitting and laying down" and that he is unable to "even function doing stuff around the house."  Id.  He indicated that he needs assistance from his girlfriend or family members.  Id.  He has difficulty bathing.  Id.  In response to questioning by plaintiff's attorney, plaintiff explained that his back impairment began when he fell off of a seven-foot ladder at work in July 2008.  (R. 56.)[6]

---

[4]     After plaintiff expressed confusion regarding the worker's compensation offset, the ALJ explained the process to plaintiff.  See R. 50-53.

[5]     Additionally, plaintiff receives mental health treatment at Cognitive Behavioral Services, Inc. and receives prescription medication for PTSD treatment there.  (R. 57.)  Plaintiff also testified that he used to take pain medication, but stopped taking it.  (R. 58.)

[6]     In response to questioning by the ALJ, plaintiff confirmed that he was diagnosed with tendonitis in his hands, but had not received treatment for this condition since 2011.  (R. 54-56.)

Plaintiff experiences side-effects from his medication. (R. 59.) He must lay down after taking medication because it makes him drowsy; the medication also causes him to feel "foggy." Id. Plaintiff also has difficulty sleeping, noting nightmares from PTSD and constant awakening during the night. Id. As a result, he naps during the day due to tiredness. (R. 60.) In addition, plaintiff does not drive, but rather utilizes public transportation. Id. However, plaintiff has difficulty taking public transportation because he uses a cane and must alternate sitting and standing. Id. Plaintiff's counsel summarized that plaintiff's alleged impairments consist of degenerative disc disease with multiple disc protrusions, chronic low back pain, coronary artery disease, obesity, ventral hernia, post-traumatic stress disorder, depression, and anxiety. (R. 61.)

The VE classified plaintiff's past work as a stocker as medium, unskilled work, that was performed by plaintiff at the very heavy exertional level. (R. 62.) The ALJ asked the VE to consider a hypothetical individual with the following limitations:

> Limited to lifting and carrying up to twenty pounds occasionally, ten pounds frequently but limiting standing and walking up to two, sitting up to eight, requiring the opportunity to sit/stand at will. Also, limit to no more than occasional pushing or pulling with the lower extremities, no climbing of ladders, ropes or scaffolds, no crawling, no more than occasionally climbing stairs and ramps, balancing, stooping, kneeling and crouching, no more than occasional exposure to extreme temperatures, pulmonary irritants, including fumes, odors, dusts, gases and poor ventilation as well as humidity, wetness, vibration and moving machinery and no exposure to unprotected heights and requiring the use of a cane for ambulation, also limited to work involving routine tasks with short, simple instructions, simple work related decisions and few workplace changes. No interaction with the public, no work that's co-dependent as if on a team and no more than occasional interaction with coworkers and supervisors.

(R. 62-63.) The VE testified that such individual could not perform plaintiff's past work, but that there would be "a range of very limited light work and sedentary." (R. 63.) With respect to

---

Plaintiff also stated that he had surgery on his rotator cuff in the past and that his arms become dislocated at times. (R. 55-56.)

light work, the VE stated that such individual could perform the following light, unskilled jobs: "assembler for plastic hospital equipment" (for which there are approximately 100 jobs in the regional economy and 52,500 nationally); "inspector for surgical instruments" (for which there are approximately 490 jobs in the regional economy and 47,000 nationally); and "sorter of small, fabricated products" (for which there are approximately 490 jobs in the regional economy and 47,000 nationally). (R. 63-64.)

The ALJ then asked the VE to consider the same hypothetical individual, but who also is limited to lifting and carrying ten pounds occasionally, standing and walking up to two hours, and who can sit for up to six hours. (R. 64.) The VE stated that such an individual could perform the following sedentary, unskilled jobs: "envelope addresser for clerical services" (for which there are approximately 850 jobs in the regional economy and 44,000 nationally); "table worker/inspector of small products" (for which there are approximately 490 jobs in the regional economy and 47,000 nationally); and "stuffer of toys, sporting, quilting products" (for which there are approximately 447 jobs in the regional economy and 37,000 nationally). (R. 64-65.) The VE further testified that a ten-to-fifteen-minute break in the morning and afternoon, and a thirty-to-sixty-minute lunch break, would be tolerated by most employers. (R. 65.) No work would be available for an individual who requires additional unscheduled breaks on a consistent basis. Id. In addition, the VE indicated that an individual who is absent more than two days per month on a consistent basis would not be able to maintain employment. Id. Furthermore, there would be no work available for an individual who is limited to no interaction with the public, coworkers, or supervisors. Id. In response to questioning by plaintiff's attorney, the VE opined that an individual who is unable to sit, stand, and walk a total of eight hours in an eight-hour workday would be unable to maintain employment. (R. 66.) The VE acknowledged that her

testimony was not entirely consistent with the Dictionary of Occupational Titles, but to the extent it was not, the testimony was based on her experience as a vocational counselor. <u>See</u> R. 67. After announcing that the record would be kept open for ten days for the submission of additional medical records, the ALJ adjourned the hearing. (R. 67.)

## IV.     DISCUSSION

The ALJ found that the evidence of record supports a finding that plaintiff has severe impairments, but the impairments do not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16-18.) Ultimately, the ALJ concluded that plaintiff retains the residual functional capacity ("RFC") to perform a range of sedentary work as detailed in her decision. <u>See</u> R. 17. Plaintiff presently contends that substantial evidence does not support the ALJ's decision. Specifically, plaintiff argues that the ALJ erred in evaluating his mental and physical impairments. (Pl.'s Br. at 1-10; Pl.'s Reply at 1-2.) In addition, relying on <u>Lucia v. S.E.C.</u>, 138 S. Ct. 2044 (2018), plaintiff contends that the case should be remanded to a different ALJ who has been constitutionally appointed. (Pl.'s Br. at 10-15; Pl.'s Reply at 2-5.) Defendant maintains that substantial evidence supports the decision of the ALJ and that the court should reject plaintiff's Appointments Clause claim because it was not presented to the SSA during the administrative process. (Def.'s Br. at 8-18.)

### A.     Appointments Clause Challenge

Plaintiff avers that the ALJ did not exercise lawful authority when plaintiff's claim was denied, because the ALJ was an inferior officer who was not properly appointed pursuant to the Appointments Clause of the United States Constitution. (Pl.'s Br. at 10-15; Pl.'s Reply at 2-5.) <u>See</u> U.S. Const., Art. II, § 2, cl. 2 (Congress may vest appointment of "inferior Officers … in the President alone, in the Courts of Law, or in the Heads of Departments."). In

Lucia, the Supreme Court held that the Securities and Exchange Commission's ALJ was appointed in violation of the Appointments Clause because the ALJ was appointed by SEC staff members, not the SEC department head. 138 S. Ct. at 2055. The Court found that Lucia made a timely challenge to the constitutional validity of the ALJ's appointment and remanded for a hearing by either a properly appointed ALJ or the SEC itself. Id. Accordingly, plaintiff presently contends that this case should be remanded to a different ALJ who has been constitutionally appointed. (Pl.'s Br. at 15.) Defendant counters that plaintiff forfeited his Appointments Clause claim because he failed to assert this challenge during the administrative proceedings. (Def.'s Br. at 8-18.) See Turner Bros., Inc. v. Conley, 757 F. App'x 697, 700 (10th Cir. 2018) (not precedential) ("Appointments Clause challenges are nonjurisdictional and may be waived or forfeited.") (citing Freytag v. Comm'r, 501 U.S. 868, 878-79 (1991)).

To date, neither the United States Court of Appeals for the Third Circuit Court nor the Supreme Court has determined whether Lucia is applicable to Social Security ALJs and courts within this Circuit have diverged on this issue. Compare Marchant o/b/o A.A.H. v. Berryhill, 2019 WL 2268982 (E.D. Pa. May 28, 2019), Muhammad v. Berryhill, 381 F. Supp. 3d 462 (E.D. Pa. 2019), and Cox v. Berryhill, 2018 WL 7585561 (E.D. Pa. Dec. 18, 2018), with Culclasure v. Comm'r of the Soc. Sec. Admin., 375 F. Supp. 3d 559 (E.D. Pa. 2019), appeal filed, No. 19-2386 (3d Cir. June 17, 2019), Cirko v. Berryhill, 2019 WL 1014195 (M.D. Pa. Mar. 4, 2019), appeal filed, No. 19-1772 (3d Cir. Apr. 10, 2019), Bizarre v. Berryhill, 364 F. Supp. 3d 418 (M.D. Pa. 2019), appeal filed, No. 19-1773 (3d Cir. Apr. 17, 2019), and Perez v. Berryhill, No. 18-1907 (Doc. 15) (E.D. Pa. Jan. 7, 2019), Report and Recommendation adopted, (Doc. 22) (E.D. Pa. Apr. 23, 2019), appeal filed, No. 19-2428 (3d Cir. June 20, 2019). However, the issue

currently is under review by the Third Circuit on a consolidated appeal.[7]  Oral argument was heard on November 13, 2019.

Nevertheless, this court finds the reasoning of <u>Marchant o/b/o A.A.H. v. Berryhill</u>, 2019 WL 2268982 (E.D. Pa. May 28, 2019) (Kelly, J.) and <u>Muhammad v. Berryhill</u>, 381 F. Supp. 3d 462 (E.D. Pa. 2019) (Pappert, J.), to be persuasive on the Appointments Clause issue.  As such, plaintiff has forfeited his right to challenge the constitutionality of the ALJ's appointment by failing to timely assert this issue during the administrative process.  Remand on this issue is not warranted.

### B.    Consideration of Evidence of Plaintiff's Mental Impairments

Pursuant to the Commissioner's regulations, RFC refers to the most a claimant can do despite his limitations.  20 C.F.R. § 416.945(a)(1).  The RFC assessment must be based upon all relevant evidence, including medical records, medical source opinions, and a claimant's description of his own symptoms.  The final responsibility for determining a claimant's RFC is reserved exclusively for the Commissioner, who will not give any special significance to the source of another opinion on this issue.  20 C.F.R. § 416.927(d)(3).[8]

Plaintiff contends that the ALJ committed a series of legal errors in evaluating the medical evidence related to his mental impairments.  (Pl.'s Br. at 3-7.)  In particular, plaintiff avers that in analyzing his RFC, the ALJ failed to properly consider a functional capacity assessment dated October 15, 2015, reasoning that the signature was illegible and assigning no

---

[7]    Notices of appeal were also filed in several Eastern District of Pennsylvania cases, including <u>Culclasure, v. Comm'r</u>, No. 19-2386, <u>Perez v. Comm'r</u>, No. 19-2428, <u>Ready v. Comm'r</u>, No. 19-2519, <u>Rodriguez v. Comm'r</u>, No. 19-2501, and <u>Wilson v. Comm'r</u>, No. 19-2639.

[8]    The court notes that 20 C.F.R. § 416.927 applies because plaintiff's claim was filed before March 27, 2017.

weight to this opinion. (Pl.'s Br. at 3-7.) Plaintiff asserts that the ALJ erred in doing so, because a comparison of the signatures on the opinion and the mental health treatment notes demonstrates that the opinion was prepared by plaintiff's treating therapist at Cognitive Behavioral Services, Luis Mejia, MHP, and by plaintiff's treating psychiatrist, Nemesia Castro, M.D. Id. The court agrees.

The medical record demonstrates that plaintiff received mental health treatment from Cognitive Behavioral Health Services, Inc., from April 2014 until at least October 2015.[9] See R. 433-81. The records reveal that on May 13, 2014, Dr. Castro conducted a comprehensive biopsychosocial evaluation of plaintiff. See R. 433-43. The report from this evaluation documents that plaintiff sought treatment for insomnia and nightmares stemming from past physical and emotional trauma, plaintiff's physical impairments, and the serious illness of plaintiff's twelve-year-old son. Id. Dr. Castro diagnosed plaintiff with "PTSD, chronic" and "mood disorder due to medical problems." (R. 441.) Plaintiff was prescribed medication and weekly individual outpatient therapy. (R. 441-42.) The record also contains the therapy notes of Mr. Mejia dated from April 29, 2014, to October 15, 2015. See R. 445-80.[10] In addition, a progress note dated September 1, 2015 and signed by Dr. Castro lists plaintiff's then-current medications and indicates that plaintiff was to continue with individual therapy and was to return in eight weeks for his next appointment. (R. 481.) As plaintiff correctly asserts, a comparison of

---

[9] The most recent mental health treatment note is dated October 15, 2015, just before the October 20, 2015 administrative hearing. See R. 445.

[10] Plaintiff attended therapy on April 29, 2014, May 13, 2014, May 20, 2014, June 3, 2014, June 10, 2014, June 17, 2014, July 8, 2014, July 15, 2014, August 5, 2014, August 12, 2014, August 19, 2014, September 2, 2014, September 18, 2014, September 26, 2014, October 7, 2014, November 6, 2014, November 11, 2014, December 1, 2014, February 4, 2015, February 10, 2015, March 17, 2015, March 24, 2015, May 5, 2015, May 14, 2015, May 19, 2015, June 9, 2015, June 25, 2015, July 21, 2015, July 31, 2015, August 18, 2015, August 27, 2015, September 17, 2015, and October 15, 2015. (R. 445-80.)

the signatures reveals that the October 15, 2015 opinion at issue contains the same signatures as the treatment notes. Compare R. 485 with R. 443, 464. Indeed, the opinion is signed by both Dr. Castro and therapist Mejia. See R. 485. Additionally, the facsimile cover sheet used by plaintiff's lawyer to submit the opinion to SSA indicates that the transmission contained a Medical Source Statement (Mental) from Cognitive Behavioral Services. See R. 482.

The October 15, 2015 opinion indicates that plaintiff has marked limitations in his ability to understand and remember short, simple instructions; carry out detailed instructions; make judgments on simple work-related decisions; and interact appropriately with supervisors. (R. 483-84.) In addition, the opinion finds that plaintiff has extreme limitations in his ability to carry out short, simple instructions; understand and remember detailed instructions; interact appropriately with the public; interact appropriately with co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting. Id. The opinion lists plaintiff's diagnoses of "PTSD, chronic, mood disorder, and medical condition" as the basis for the assessments. (R. 484.)

Pursuant to the regulations in effect at the time of the ALJ's decision, an ALJ must give medical opinions the weight she deems appropriate based on factors such as whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the record as a whole. See 20 C.F.R. § 416.927. An ALJ shall "accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (internal citations omitted). The regulations provide that an ALJ shall give a treating physician's opinion controlling weight when it is "well-supported by medically acceptable

clinical and laboratory diagnostic techniques" and it is not "inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). If the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. Morales, 225 F.3d at 317 (citing Plummer, 186 F.3d at 429). That is, a treating source's opinion may be rejected "on the basis of contradictory medical evidence," Plummer, 186 F.3d at 429, or if it is unsupported by sufficient clinical data, Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985). An ALJ may not reject a treating physician's opinion based upon her own credibility judgments, speculation, or lay opinion. Morales, 225 F.3d at 317.

In her decision, the ALJ stated the following with respect to the October 15, 2015 opinion:

> A medical source statement of the claimant's ability to do work-related mental activities dated October 15, 2015, was submitted in this matter. The report was submitted by the claimant's representative. The signature/name on the report is not legible. The report indicates that the claimant is markedly or extremely limited in all ten categories considered. For example, the claimant is described as extremely limited in his abilities to carry out short and simple instructions, interact appropriately with the public and with coworkers, and to respond appropriately to work pressures in a usual work setting. The author of the assessment stated that the claimant does not have any history of drug or alcohol use. As stated, it is unknown who wrote the assessment, and it is unknown whether that person is a treating therapist. There are no supporting records for this assessment. Although the assessment indicates that the claimant has no history of drug use, his medical records indicate drug abuse and drug seeking behavior with treating sources (Exhibit C-17-F). I accord this assessment no weight. The significant limitations described on the claimant's work related mental activities are not supported by the record. Although the report was provided by the claimant's representative, it is not even known who wrote the assessment and whether the author of the report is a treating source (SSR 96-2p).

(R. 23.)[11]

This court is cognizant of the fact that there is "no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004) (not precedential), and that "[a]n ALJ may accept some of a medical source's opinions while rejecting other opinions from the same source." Comiskey v. Astrue, 2010 WL 308979, at *9 (E.D. Pa. Jan. 27, 2010) (citing Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202-04 (3d Cir. 2008)). However, an ALJ may not "'pick and choose' among the evidence, selecting only that which supports his ultimate conclusions." Middlemas v. Astrue, 2009 WL 578406, at *9 (W.D. Pa. Mar. 5, 2009) (citing Morales v. Apfel, 225 F.3d 310, 318 (3d Cir. 2000) (an ALJ may not simply rely on "the pieces of the examination reports that supported [his] determination," while excluding other evidence)).

The ALJ's treatment of the October 15, 2015 opinion is troublesome, given that this evidence lends support to plaintiff's claimed mental functional limitations. The opinion obviously was prepared by plaintiff's treating therapist and treating psychologist. In addition, although the ALJ indicated that there are no supporting records for the assessment, there are numerous therapy notes dated April 2014 through October 2015 that document plaintiff's treatment. See R. R. 445-80. While the ALJ was not required to give this opinion controlling weight, the ALJ was required to evaluate the opinion in accordance with the proper standards. The substantial evidence test is not satisfied if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). See also Nazario v. Comm'r Soc. Sec., 2019 WL 6170820, at *4 (3d Cir. Nov. 20, 2019) (not

---

[11]  Although the opinion indicates "patient don't have any history about to use any alcohol or drugs", see R. 484, 485, the May 13, 2014 evaluation report notes drug use in his twenties, see R. 434.

precedential) (same).  Because the ALJ did not properly evaluate the opinion, substantial evidence does not support her decision.[12]

Therefore, the case will be remanded for further proceedings.  If the ALJ again determines that plaintiff retains the RFC to perform a range of sedentary work, she must provide an adequate basis for that determination.  Upon remand, the Commissioner may well reach the same conclusion; however, in the absence of sufficient indication that the Commissioner considered all of the evidence in the case and applied the correct legal standards, this court cannot satisfy its obligation to determine whether substantial evidence supports the Commissioner's decision.  See Terwilliger v. Chater, 945 F. Supp. 836, 844 (E.D. Pa. 1996) (remanding case in the absence of sufficient indication that the Commissioner considered all of the evidence).[13]

---

[12]    The court is mindful that this court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence."  42 U.S.C. § 405(g); Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994).  This court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record.  Monsour Med. Ctr., 806 F.2d at 1190-91.  See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2012) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); Burns, 312 F.3d at 118 ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder.").  See also Cortes v. Comm'r of Soc. Sec., 255 F. App'x 646, 653 (3d Cir. 2007) (not precedential) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (quoting S.E.C. v. Chenery Corp., 318 U.S. 80, 87 (1943)); Clinkscales o/b/o T.S. v. Colvin, 232 F. Supp. 3d 725, 735-36 (E.D. Pa. 2017) (same).

[13]    Plaintiff also contends that the ALJ compounded the errors relating to plaintiff's mental impairments by rejecting the opinion of William Davis, Psy. D., who conducted a consultative psychiatric evaluation on March 10, 2014, and by relying on the opinion of Jonathan Rightmeyer, a state agency reviewing physician whose March 13, 2014 review of the record encompassed Dr. Davis' opinion but not the mental health treatment records of Cognitive Behavioral Services.  (Pl.'s Br. at 5-7.)  The ALJ's failure to properly consider the October 15, 2015 opinion may have impacted the ALJ's consideration of the opinions of Dr. Davis and Dr. Rightmeyer.  Upon remand, the ALJ will have the opportunity to analyze all of the evidence in the record and to specify the reasons for her decisions.

## C.    Evidence of Physical Impairments

Plaintiff also argues that although he was previously found disabled on the basis of meeting Listing 1.04A, the ALJ here determined that despite plaintiff's physical impairments, he could perform a limited range of sedentary work.  According to plaintiff, this finding is not properly supported by medical opinion evidence because, inter alia, the ALJ could have ordered an updated consultative examination but chose not to do so and instead interpreted the diagnostic evidence herself.  (Pl.'s Br. at 7-10; Pl.'s Reply at 2.)

The court already has determined supra that the ALJ's analysis is incomplete and warrants further consideration.  A remand may produce different results on plaintiff's application, making discussion of this claim moot.  See Steininger v. Barnhart, 2005 WL 2077375, at *4 (E.D. Pa. Aug. 24, 2005) (concluding that the ALJ's hypothetical was deficient and the vocational expert's answer to it does not constitute substantial evidence for the ALJ's decision and declining to address plaintiff's other arguments for remand, "as the ALJ's findings may be revised in any decision issued following the new hearing").  See also LaSalle v. Comm'r of Soc. Sec., 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011) (remanding for the ALJ's failure to consider and analyze all relevant medical evidence regarding plaintiff's mental impairments and declining to examine plaintiff's additional claims because a "remand may produce different results on these claims, making discussion of them moot"); Nieves v. Astrue, 2010 WL 629831, at *7 (E.D. Pa. Feb. 19, 2010) (same); Watson v. Astrue, 2009 WL 678717, at *6 (E.D. Pa. Mar. 13, 2009) (declining to address plaintiff's remaining claims "until the basis for the ALJ's ruling is clarified through remand").  As such, the court will not address this claim in detail.  The court notes, however, that contrary to plaintiff's assertions, a consultative internal medicine examination was performed on March 10, 2014 by Kathleen Mullin, M.D.  See R. 301-12.  In

fact, Dr. Mullin considered at least some of the medical diagnostic testing that plaintiff avers was not reviewed by a medical professional.  <u>See</u> R. 304.  Furthermore, in her decision, the ALJ analyzed Dr. Mullin's report and considered the accompanying functional assessment.  <u>See</u> R. 20-21.  In any event, upon remand, if the ALJ again determines that plaintiff retains the RFC to perform a limited range of sedentary work, she must provide an adequate basis for her determination.

### D. Motion to Stay

Defendant filed a Motion to Stay (Doc. 14) (the "Motion"), requesting that the case be stayed pending resolution by the Third Circuit of the consolidated appeal of <u>Bizarre</u>, <u>Cirko</u>, and the other cases that present the Appointments Clause challenge.  Defendant contends that the pending appeals raise the same legal issue presented in this case with respect to that issue.  <u>See</u> Mot. at 4.  Plaintiff objects to the Motion.  (Doc. 15.)

"In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." <u>Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO</u>, 544 F.2d 1207, 1215 (3d Cir. 1976) (citing <u>Am. Life Ins. Co. v. Stewart</u>, 300 U.S. 203, 215 (1937)).  The Supreme Court has explained that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 254-55 (1936).

Therefore, when deciding a motion to stay proceedings pending the resolution of another action in federal court, the court must consider "whether the proposed stay would

prejudice the non-moving party, whether the proponent of the stay would suffer a hardship or inequity if forced to proceed and whether granting the stay would further the interest of judicial economy." Airgas, Inc. v. Cravath, Swaine & Moore LLP, 2010 WL 624955, at *3 (E.D. Pa. Feb. 22, 2010) (citing Landis, 299 U.S. at 254-55).[14] The Supreme Court has made clear, however, that in deciding whether to stay a suit pending the outcome of another suit, the party moving for a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to [someone] else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." Landis, 299 U.S. at 555. See also CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc., 381 F.3d 131, 139 (3d Cir. 2004) (the party seeking the stay "must state a clear countervailing interest to abridge a party's right to litigate"); Gold v. Johns-Manville Sales Corp., 723 F.2d 1068, 1075-76 (3d Cir. 1983) ("It is well settled that before a stay may be issued, the [party seeking the stay] must demonstrate a clear case of hardship or inequity, if there is even a fair possibility that the stay would work damage on another party. In these cases, the clear damage to the [non-moving

---

[14] "Although the Third Circuit has not endorsed a definitive formulation of factors to consider, courts in this Circuit engage in a balancing analysis to determine if a stay is appropriate." Razak v. Uber Techs., Inc., 2016 WL 3960556, at *3 (E.D. Pa. July 21, 2016). These factors have been articulated in various terms. See, e.g., Brandywine Vill. Assocs. v. Carlino E. Brandywine, L.P., 2018 WL 3752876, at *3 (E.D. Pa. Aug. 8, 2018) ("Applying Landis, this Court considers four factors before granting a stay: (1) the length of the requested stay; (2) the hardship that the movant would face if the stay was not granted; (3) the injury that a stay would inflict on the non-movant; and (4) whether granting a stay would streamline the proceedings by simplifying issues and promoting judicial economy.") (internal quotations omitted), appeal filed, No. 18-2874 (3d Cir. Aug. 23, 2018); City of New Castle v. Purdue Pharma L.P., 2018 WL 3438841, at *2 (E.D. Pa. July 16, 2018) ("In order to decide a motion to stay proceedings pending the resolution of another action in federal court, courts have considered the following three factors: '(1) the promotion of judicial economy; (2) the balance of harm to the parties; and (3) the duration of the requested stay.'") (quoting Cirulli v. Bausch & Lomb, Inc., 2009 WL 545572, at *2 (E.D. Pa. Mar. 4, 2009)).

parties] is the hardship of being forced to wait for an indefinite and . . . a lengthy time before their causes are heard.") (internal quotations and citations omitted).

Defendant avers that the factors weigh in favor of the requested stay. First, defendant notes that the appeals in <u>Bizarre</u> and <u>Cirko</u> are already in motion. (Mot. at 4.) Second, defendant avers that the Commissioner would face hardship if the stay were not granted in that it would continue to utilize resources in objecting to and filing additional appeals in unfavorable cases, and in responding to objections and appeals in favorable cases while the <u>Bizarre</u> and <u>Cirko</u> appeals are pending. <u>Id.</u> Third, defendant asserts that there is no possibility of prejudicial delay, because even if the Appointments Clause issue were decided in plaintiff's favor, defendant would likely appeal. <u>Id.</u> at 4. Defendant further avers that the court must decide the Appointments Clause issue in order to determine whether the case should be remanded to a new ALJ. <u>Id.</u> Fourth, defendant asserts that granting the stay would streamline the proceedings by simplifying issues and promoting judicial economy. <u>Id.</u> at 5.

The court finds these arguments unpersuasive. A stay would result in prejudicial delay to plaintiff, who initially filed his application for SSI nearly six years ago, on January 15, 2014. Although the Third Circuit heard oral argument on the consolidated appeal on the Appointments Clause challenge on November 13, 2019, a stay nonetheless would at a minimum require plaintiff to wait until the Third Circuit issues its opinion and this court renders a decision. Additionally, defendant contends that remanded cases "generally go to the same ALJ who initially heard the case, unless the case had already been remanded once or other special circumstances applied." <u>Id.</u> at 5 (citing HALLEX I-2-1-55(D)). However, defendant does not assert that the present case <u>cannot</u> be remanded to a different ALJ, and has not demonstrated that

such directive would create a clear case of hardship.[15]  See id. at 4-5.  Moreover, it is unclear to this court how granting the motion to stay will promote judicial economy as defendant asserts, given the backlog of cases that inevitably results.

While defendant argues that the four factors weigh in favor of defendant's requested stay, defendant has not demonstrated a clear case of hardship or inequity.  "The proponent of a stay bears the burden of establishing its need."  Richardson v. Verde Energy USA, Inc., 2016 WL 4478839, at *2 (E.D. Pa. Aug. 25, 2016) (quoting Clinton v. Jones, 520 U.S. 681, 708 (1997)).  The court, therefore, will deny defendant's motion to stay these proceedings pending resolution of the appeals in Cirko and Bizarre, and directs that the case be remanded to a different ALJ on the substantive basis set forth above.

## V.    CONCLUSION

After a careful and thorough review of all of the evidence in the record, and for the reasons set forth above, this court finds that the ALJ's findings are not supported by substantial evidence.  Accordingly, plaintiff's Request for Review will be granted to the extent that the matter is remanded for further proceedings consistent with this opinion.  In addition, defendant's Motion to Stay will be denied.

An appropriate Order accompanies this opinion.

BY THE COURT:

_/s/ Thomas J. Rueter_____
THOMAS J. RUETER
United States Magistrate Judge

---

[15]    On July 16, 2018, the Commissioner ratified the appointment of Social Security ALJs and Appeals Council administrative appeals judges, and approved their appointments as her own in order to address any Appointments Clause questions involving SSA claims.  See SSR 19-1p, 2019 WL 1324866 (S.S.A. Mar. 15, 2019) (citing Social Security Emergency Message (EM) 18003 REV 2, § B (available at:
https://secure.ssa.gov/apps10/reference.nsf/links/08062018021025PM)).